**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |
|---|---|
| CANDACE E. ALSTON and<br>NEIL F. LETREN,<br><br>      Plaintiffs,<br><br>      v.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC.,<br><br>      Defendant. | Civil Action No. TDC-14-3957 |

**MEMORANDUM OPINION**

Plaintiffs Candace E. Alston and Neil F. Letren have filed suit against Defendant Experian Information Solutions, Inc. ("Experian") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (2012). Presently pending is Experian's Motion to Dismiss and/or Motion for Summary Judgment or in the Alternative, Motion to Stay and Sever ("Motion"). Also pending is Plaintiffs' Cross-Motion for Summary Judgment ("Cross-Motion"). Having reviewed the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Experian's Motion, construed as a Motion to Dismiss, is GRANTED IN PART and DENIED IN PART, and Plaintiffs' Cross-Motion for Summary Judgment is DENIED.

**BACKGROUND**

## I.    Alston's Allegations

On July 17, 2011, Alston contacted Experian to dispute its reporting of a Wells Fargo Home Mortgage ("Wells Fargo") account. In response, Experian sent an automated consumer

dispute verification ("ACDV") to Wells Fargo seeking confirmation of the accuracy of the account information, which Wells Fargo provided. In a report dated August 12, 2011, Experian informed Alston of the results of its investigation. On November 21, 2011, Alston again disputed Experian's reporting of the account. In a response dated December 2, 2011, Experian informed Alston that it had already investigated the Wells Fargo account and confirmed its accuracy, so it would not investigate the issue again. The letter explained that Experian would reinvestigate the account if Alston provided "additional relevant information" about her dispute, and provided Alston with examples of such information. Compl. Ex. A. It also offered to add a "statement of continued dispute" to her credit report. *Id.* The letter further stated that she "[w]ould not receive this notice again regarding [the Wells Fargo dispute.]" Am. Compl. ¶ 8 (brackets in original).

On June 12, 2012 and September 21, 2013, Alston again submitted letters to dispute Experian's reporting of the Wells Fargo account. Experian did not investigate either of these disputes because it determined that they were frivolous. However, Alston alleges that in its correspondence with her, Experian did not expressly inform Alston that it had determined that her disputes were frivolous. On April 21, 2014, Alston again disputed Experian's reporting of the Wells Fargo account, specifically the reporting of her August 2011 payment history as "No Data." Am. Compl. ¶ 18. According to Alston, this was the first time she directed Experian specifically to the "No Data" entry for August 2011, which had just been inserted in March 2014. Although, in her estimation, Alston provided Experian with additional relevant information about the Wells Fargo account, Experian refused to reinvestigate.

## II.     Letren's Allegations

Letren asserts that between September 2013 and December 2013, he submitted several written disputes to Experian about various credit report entries, including entries relating to accounts with Aurora Bank FSB, Wells Fargo, Chase, and RoundPoint.  On December 18, 2013, in response to some or all of those disputes, Experian sent Letren a letter stating that it had received a "suspicious request regarding your personal credit information that we have determined was not sent by you." Compl. Ex. B.  Experian explained that because it believed the disputes could be a "deceptive or fraudulent use of your information," it had not taken any action on the disputes and would not process or respond to any future requests "made in this manner." *Id.*   On February 7, 2014 and August 15, 2014, Letren sent additional written disputes to Experian related to some of the accounts that he previously disputed, as well as to other accounts.  Letren asserts that Experian did not investigate these disputes and also did not inform him that it was not investigating them.

## III.     Procedural History

On December 29, 2014, Alston and Letren, proceeding *pro se*, filed suit in this Court against Experian alleging causes of action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (2012), specifically § 1681i(a)(3), which provides that a consumer reporting agency ("CRA") may terminate a reinvestigation of a consumer dispute if it "reasonably determines that the dispute by the consumer is frivolous or irrelevant," § 1681i(a)(3)(A), and that when a CRA makes such a determination, it "shall notify the consumer of such determination not later than 5 business days after making such determination," by mail or by other authorized means, § 1681i(a)(3)(B).  Plaintiffs appear to allege that Experian did not reasonably determine that their subsequent disputes were frivolous or irrelevant, and that

3

Experian failed to provide them with the required statutory notification of those determinations. Plaintiffs style their Complaint as a class action, alleging two different classes, one for violations of § 1681i(a)(3)(A) and one for violations of § 1681i(a)(3)(B).

On January 6, 2015, the Court (Chasanow, J.) denied class certification on the grounds that that a *pro se* litigant cannot act as a representative of a class. Alston filed a Motion to Alter or Amend that Order, asserting that Plaintiffs had not yet sought class certification, so the Court's denial of certification was premature and threatened to preclude them from seeking it in future. The Court denied that motion, clarifying that if Alston and Letren were to secure counsel, they "may amend or seek leave to amend to include a request to proceed as a class action." Jan. 16, 2015 Order at 2.

On July 17, 2015, Alston and Letren amended their Complaint to supplement their factual allegations. They did not allege any new causes of action. On August 26, 2015, Experian moved to dismiss Alston's claims, arguing that they are barred under the doctrine against claim splitting because they stem from the same set of underlying facts at issue in another lawsuit Alston filed against Experian, *Alston v. Transunion, et al.*, Civil Action No. TDC-14-1180, which is currently pending before this Court. Experian asserted, alternatively, that if Alston's claims were allowed to proceed, they should be severed from Letren's and stayed pending the outcome of the related litigation. As to Letren, Experian moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that Letren failed to allege sufficient facts to state a claim for a violation of § 1681i(a)(3)(A) or (B). On September 14, 2015, Plaintiffs filed an Opposition to Experian's Motion and included in that filing a Cross-Motion for Summary Judgment ("the Cross-Motion"). On October 26, 2015, Experian filed a Reply memorandum as to Alston that also served as an Opposition to Alston's Cross-Motion, as well as a separate Reply and

Opposition memorandum as to Letren.   Attached to the Opposition as to Letren was a Declaration from Experian's counsel stating that Experian needs discovery on Letren's claims, describing the proposed discovery, and concluding that summary judgment would therefore be premature.   On October 31, 2015, counsel entered an appearance on behalf of Plaintiffs.   On December 18, 2015, Plaintiffs each filed separate reply memoranda on the Cross-Motion.

## DISCUSSION

### I.   Experian's Motion to Dismiss

Although Experian references summary judgment in the title of its Motion, it offers no arguments in support of summary judgment.   The Court thus treats Experian's Motion solely as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

### A.   Legal Standard

To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.*   In evaluating the sufficiency of the plaintiff's claims, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).   Complaints filed by *pro se* plaintiffs are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare

5

assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

### B.   Alston's Claims

Experian argues that the claims Alston raises in this case ("*Alston II*") should have been raised in *Alston v. Transunion, et al.*, No. 14-1180 ("*Alston I*"), currently pending before this Court, such that Alston's claims here are barred by the doctrine of claim splitting. "It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006) (citing *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). Such duplicative litigation is known as "claim splitting," an aspect of *res judicata. Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.,* 273 F. App'x 256, 264 (4th Cir. 2008) "The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *Id.* at 265 (internal quotation marks omitted). It is a doctrine designed to "foster judicial economy" and protect the parties from "the vexation of concurrent litigation over the same subject matter." *Curtis v. Citibank, N.A .,* 226 F.3d 133, 138 (2d Cir. 2000). A plaintiff therefore cannot bring an action in the same federal court, against the same defendant, and on the same subject, while the first action remains pending. *Sensormatic Sec. Corp.*, 273 F. App'x at 265 (citing *Curtis,* 226 F.3d at 138–39). For the rule against claim splitting to apply, the claims alleged in the second suit need not be identical to those alleged in the first suit. Rather, the suits and claims need only involve the same parties and "arise out of the same transaction or series of transactions as the first claim." *Id.; see also Pueschel v. United States,* 369 F.3d 345, 355 (4th Cir. 2004) (finding that *res judicata* applies if the second suit "arises out of the same transaction or series of

transactions or the same core of operative facts") (quoting *In re Varat Enters., Inc.*, 831 F.3d 1310, 1316 (4th Cir.1996)).

Here, Alston's claims in *Alston II* arise out of the same series of transactions and core of operative facts which form the basis for her suit in *Alston I*, namely Experian's credit report entries relating to her Wells Fargo mortgage account. An analysis of the allegations in each case confirms this conclusion. In *Alston I*, Alston's claims against Transunion and Experian for alleged FCRA violations based on their reporting of her Wells Fargo mortgage account relate to almost the exact same series of written disputes that form the bulk of Alston's allegations in this case. In both cases, Alston takes issue with Experian's handling of Alston's November 21, 2011, June 12, 2012, and September 21, 2013 disputes.[1] The only factual difference is that *Alston II* adds an April 21, 2014 dispute.

As to the legal theories at issue, in *Alston I*, Alston asserts that Experian failed to follow reasonable procedures in maintaining her credit information, in violation of 15 U.S.C. § 1681e(b) and that it failed to conduct a reasonable investigation into her disputes and make corrections to inaccuracies, in violation of 15 U.S.C. § 1681i. Specifically, Alston claims that Experian violated this section by failing to conduct an investigation, to provide Wells Fargo with all relevant information, to review and consider information submitted by Alston, to delete or correct all inaccurate information, and to provide Alston with a timely description of its investigation, pursuant to 15 U.S.C. §§ 1681i(a)(1), (2), (4), (5)(A), and (7). In *Alston II*, Alston alleges two additional ways that she believes Experian violated § 1681i. She claims that Experian violated § 1681i(a)(3)(A) and (B) because it did not reasonably determine that her

---

[1]   Alston's Complaint in *Alston I* includes only the November 2011 and July 2012 disputes. However, her Motion for Partial Summary Judgment expanded her factual allegations to include the September 2013 dispute.

disputes were frivolous or irrelevant, and it did not provide her with the required statutory notice of that determination. Although Alston references a different subsection of the same statute in *Alston II*, the overarching alleged statutory violation is the same in both cases: Experian violated 15 U.S.C. § 1681i because it did not conduct a reasonable investigation into her disputes about her Wells Fargo mortgage account. With the factual predicates for *Alston I* and *Alston II* virtually indistinguishable and the theory of liability in the two cases largely unchanged, the Court concludes that *Alston II* arises out of the same series of transactions and core of operative facts as *Alston I*. *Alston II* is barred by the doctrine of claim splitting. *See Sensormatic Sec. Corp.*, 273 F. App'x at 265.

Alston asserts, however, that she could not have raised her current claims in *Alston I* because she first learned that Experian had determined her disputes to be frivolous when Experian admitted that fact in its July 3, 2014 Opposition to her Motion for Partial Summary Judgment in *Alston I*, which she claimed to have received on July 8, 2014, the day after the deadline for amending her complaint in that case. This argument is unpersuasive. Alston filed *Alston I* on July 16, 2013. By that point, Alston had enough information to allege the violations of the FCRA that she now alleges in *Alston II*. In her Complaint in *Alston I*, Alston asserts that in its response to her November 21, 2011 dispute, Experian informed her that it had not reinvestigated her allegations because it had determined that "her dispute was frivolous." *Alston I* Compl. ¶ 32. When Experian then declined to reinvestigate the Wells Fargo account based on her June 12, 2012 dispute, Alston could have easily inferred that Experian had again come to the conclusion that the dispute was frivolous, a conclusion that is the premise of her § 1681i(a)(3)(A) claim in *Alston II*. As to the *Alston II* claim alleging that Experian failed to provide notice of its determination that her dispute was frivolous, by the time Alston filed *Alston I*, she knew that

Experian had not reinvestigated the Wells Fargo account based on her June 2012 dispute, and also knew that Experian had not informed her of its reason for not conducting a reinvestigation. She therefore had the factual predicate for her § 1681i(a)(3)(B) claim.

Furthermore, although Alston could not have included the claim based on her September 21, 2013 and April 21, 2014 dispute in her original *Alston I* Complaint because those disputes post-dated that filing, she could have amended her Complaint to include them. Alston did not serve Experian until March 27, 2014, and Experian removed the case to this Court on April 10, 2014. The *Alston I* Scheduling Order gave Alston until July 7, 2014 to amend her complaint. By that date, she was well aware that Experian had failed to investigate her September 2013 and April 2014 disputes, which followed up on the November 2011 dispute that had been deemed frivolous, and she was fully aware that she had received no notice from Experian explaining why it had not investigated these disputes. Even though she had this information, and even included the September 2013 dispute in her May 20, 2014 Motion for Partial Summary Judgment in *Alston I*, Alston made no effort to take advantage of the July 7, 2014 deadline to amend her complaint to include those ripe claims.

Even if the Court accepts Alston's premise that she did not have a sufficient basis to assert her claims in *Alston II* until July 8, 2014, the day after the deadline for the amendment of pleadings, her argument still fails. On four occasions after that July 7, 2014 deadline, at Alston's request or at the mutual request of the parties, the Court extended the discovery deadline, which was ultimately extended all the way to March 31, 2016. In none of those requests, the first of which was filed on October 27, 2014, did Alston seek to amend her Complaint to include the allegations under § 1681i(a)(3)(A) and (B). In light of this Court's demonstrated willingness to extend discovery, Alston's implicit assertion that she could not have brought her current claims

9

in *Alston I* because July 7, 2014 was a hard and fast deadline rings hollow. This is particularly true considering that Federal Rule of Civil Procedure 15 advises courts to "freely give leave" to amend. Fed. R. Civ. P. 15(a)(2). Considering her repeated, successful requests to extend discovery, it is noteworthy that Alston offers no explanation for why she failed to seek an extension of the July 7, 2014 deadline for amending the complaint.

Significantly, Alston acknowledged, in her October 2014 motion seeking an extension of the discovery deadline, that she did not make her first discovery requests in *Alston I* until August 2, 2014 because she was waiting for the defendants to file their briefs in opposition to the Motion for Partial Summary Judgment before crafting those requests. Thus, it is undisputed that Alston was aware of the viability of the claims that form the basis of *Alston II* before discovery in *Alston I* had commenced in earnest. The *Alston II* claims therefore could have seamlessly been incorporated into *Alston I*, making *Alston II* precisely the kind of waste of judicial resources and vexatious litigation that the doctrine of claim splitting is designed to prevent. *See Sensormatic*, 452 F. Supp. 2d at 628 (stating that allowing a plaintiff to pursue claim splitting through "piecemeal claims" would "put the parties to the cost and vexation of multiple lawsuits, deplete judicial resources, foster inconsistent decision, and diminish reliance on judicial decisions").

Lastly, Alston asserts that her claims should not be barred by the doctrine of claim splitting because class actions are a well-known exception to that rule. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 432 (4th Cir. 2003) (noting that class actions are "one of the recognized exceptions to the rule against claim-splitting") (internal quotation marks and citation omitted). Alston's premise is correct but her application of that premise to this case is wrong. Generally, *res judicata* bars a plaintiff from raising in a parallel or subsequent suit any claim that was actually raised or that could have been raised in a parallel or prior suit. *See*

*Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).  In *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867 (1984), the United States Supreme Court identified an exception applicable to class actions.  *See id.* at 880.  The Court held that although class members are precluded by *res judicata* from relitigating in an individual suit any claim that was litigated and resolved in the class action, to the extent that class members had individual claims not encompassed in the class action, those claims were not precluded.  *See id.*  This principle is sensible because a class action is designed to adjudicate "common questions of law and fact" and does not necessarily resolve all claims relating to each individual class member, so it would be inappropriate to bar separate litigation of those unique claims.  *See id.*  The situation described in *Cooper* is plainly not present here.  Alston is not a former class member seeking to pursue claims not included in her class action; she is an individual litigant seeking to pursue claims through a class action that she could have raised in her individual suit.  The traditional principles of *res judicata* and claim splitting thus apply, and those principles, for the reasons outlined above, dictate that her claims in *Alston II* be dismissed.

Because the Court is dismissing Alston's claims, it need not, and so does not, consider Experian's arguments to stay or sever those claims.

### C.     Letren's Claims

Experian asserts that Letren's claims must be dismissed because they are conclusory and therefore do not state a violation of § 1681i(a)(3)(A) or (B).  To support this argument, Experian notes that in its December 18, 2013 response to Letren's first dispute letter, it informed Letren that, "[a]ny future requests made in this manner will not be processed and will not receive a response." Compl. Ex. B.  Experian then asserts that Letren nowhere alleges that his subsequent disputes were sent in a manner different from his first dispute and so concludes that Letren has

not adequately alleged facts to support his claim. Experian seems to be couching a legal argument—that its December 18, 2013 letter served as adequate notice of its determination regarding any subsequent, similar dispute—as one about inadequate factual allegations. On the legal question, Experian provides no authority for its interpretation of its obligations under the FCRA, and on the factual question, it cuts too fine a distinction. Letren alleges that he submitted disputes to Experian, that Experian failed to investigate those disputes, and that Experian did not properly inform him of its determination that it would not investigate his disputes. While these allegations are limited, when construed in the light most favorable to Letren, *Albright*, 510 U.S. at 268, they are enough to state a claim under § 1681i(a)(3)(A) and (B) of the FCRA. Experian's Motion to Dismiss as to Letren is therefore denied.

## II.     Alston and Letren's Cross-Motion for Summary Judgment

In response to Experian's Motion, Alston and Letren filed a Cross-Motion for Summary Judgment. Because Alston's claims are barred by the doctrine of claim splitting, the Motion for Summary Judgment as to her claims is necessarily denied.

The Court also denies the Cross-Motion as to Letren's claims. Although a party may move for summary judgment before the commencement of discovery, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). That is the situation here. Experian's counsel filed a Declaration pursuant to Federal Rule of Civil Procedure 56(d) stating that summary judgment would be premature because Experian needs to conduct discovery on whether Letren's credit report was inaccurate; whether Letren's claims are substantially similar to claims he has raised in previous litigation;

and the scope of Letren's damages, if any. Because Experian has asserted that it needs but has not yet had an opportunity to discover information essential to its opposition to Letren's allegations, Letren's Motion for Summary Judgment is denied.

## CONCLUSION

For the reasons set forth above, Experian's Motion to Dismiss is GRANTED as to Alston's claims, but DENIED as to Letren's claims, and Plaintiffs' Cross-Motion for Summary Judgment is DENIED. A separate Order shall issue.

Date:  March 3, 2016

THEODORE D. CHUANG
United States District Judge